EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALIPIO RIVERA RAMOS, acusado y apelante.

No. 5774.—*Sometido:* Mayo 21, 1935. *Resuelto:* Mayo 29, 1935.

*F. González, Jr.,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Alipio Rivera Ramos fué denunciado por un delito de alterar la paz cometido en la calle Georgetti de Humacao como a la una de la madrugada del día 1 de diciembre de 1934. Se alega en la denuncia que el acusado, voluntaria y maliciosamente, y en aparente estado de embriaguez, alteró la paz y tranquilidad del inmediato vecindario y especialmente la de los denunciantes, con un fuerte escándalo que formó pronunciando frases obscenas, dichas en alta voz, en forma estrepitosa e inconveniente y al alcance del oído de mujeres

y niños, dando lugar con su conducta desordenada y ofensiva a que se alterara la paz y tranquilidad del inmediato vecindario y especialmente la de los denunciantes. Hemos silenciado las frases obscenas que se le atribuyen al acusado en la denuncia, porque hemos de referirnos más adelante a las que fueron objeto de prueba, que son las únicas que podemos tomar en consideración.

La corte inferior declaró culpable al acusado y le condenó a pagar diez dólares de multa o en su defecto a sufrir un día de cárcel por cada dólar que dejase de satisfacer.

Se alega como único motivo de error que la sentencia es contraria a la prueba y que no está sostenida por ninguna de las alegaciones de la denuncia. Arguye el acusado que el elemente público, indispensable para la comisión de un delito de alteración de la paz, no quedó probado, porque ninguna de las frases que se ponen en labios del acusado aparecen dichas en forma estrepitosa e inconveniente ni al alcance del oído de mujeres y niños.

La querella aparece autorizada por el policía Guillermo Fernández. La prueba aportada consistió en el testimonio del policía insular Otilio Encarnación, quien acompañaba al guardia Fernández el día en que ocurrieron los hechos denunciados. Declara el referido testigo que encontrándose con su compañero en la Plaza Muñoz Rivera de Humacao, como a la una de la madrugada, oyeron que se cantaba una canción en la calle de Georgetti. Se acercaron al sitio donde se cantaba y allí encontraron al acusado y a otros jóvenes, a quienes preguntaron si tenían permiso para cantar. Alipio, algo ebrio, en actitud colérica, le dijo al guardia Fernández que eran abusos de la policía y pronunció allí frases fuertes, diciendo: "Coño, estos guardias son unos pendejos, y yo soy un hombre serio y de respeto." Entonces el guardia arrestó al hombre y lo agarró por el brazo, interviniendo el testigo en ese momento en que uno de los compañeros del acusado quiso brincar sobre el otro guardia; que el declarante haló por su macana en una actitud

fuerte, diciendo: "Fuera todos los que estén pegados del guardia"; que los jóvenes se despegaron y arrestaron a Alipio, llevándolo a la cárcel, y que arrestaron también a sus demás compañeros, pero como se portaron correctamente los soltaron y dejaron arrestado al acusado; que todos los jóvenes cantaban y tocaban en grupo; que estaban en ánimo alegre; que el único que habló en la forma relatada fué Alipio; que los demás no hablaron; que los llevaron a la cárcel para tomar nota y después los soltaron; que cuando uno de los jóvenes brincó hacia el guardia fué que el testigo sacó la macana como medida de precaución, diciéndole que se retirara y que entonces se despegaron; que no puede decir a qué se debió la actitud de este joven; que nadie demostró una actitud violenta de darle al guardia. Se le pregunta que por qué si estaban tranquilos y ninguno intentó agredir al guardia hizo uso de la macana, y contesta que también ha declarado que estaban en una actitud violenta y amenazadora y que en el momento en que intervino se fueron para encima del policía Fernández y entonces haló por la macana, diciéndoles: "Fuera, no se peguen del guardia"; que había visto a estos jóvenes en otras ocasiones dando serenatas, que son muy buenos muchachos todos, jóvenes de escuela la mayor parte y buenas personas; que intervinieron porque existe una ordenanza en Humacao que no permite cantar después de las doce de la noche sin obtenerse un permiso del Alcalde.

Terminada la declaración de este testigo, el fiscal manifestó que el otro guardia se encontraba enfermo y que su evidencia, de comparecer, sería cumulativa. El acusado no presentó prueba alguna. Su defensa se basa en que no quedó probado el elemento público, indispensable, a su juicio, para la comisión de un delito de alterar la paz. En apoyo de esta teoría cita los casos de *El Pueblo* v. *Vaz*, 28 D.P.R. 926; *Pueblo* v. *Ruiz*, 29 D.P.R. 74 y *Pueblo* v. *Ways*, 29 D.P.R. 339. En *El Pueblo* v. *Ruiz* se resolvió que no

basta decir en una denuncia que se usaron por el acusado frases amenazadoras o se adoptó cierta actitud agresiva, si no se expresa que dichas frases o actitud produjeron en realidad de verdad el fecto de perturbar la paz de determinada o determinadas personas, pues esta perturbación constituye la ofensa delictiva. En el presente caso se alega que el acusado pronunció frases obscenas, dichas en alta voz, en forma estrepitosa e inconveniente y al alcance del oído de mujeres y niños, dando lugar con su conducta desordenada y ofensiva a que se alterara la paz y tranquilidad del inmediato vecindario y especialmente la de los denunciantes. Prescindiendo por ahora de los hechos y refiriéndonos exclusivamente a la denuncia, no hay duda de que en la misma se imputa al acusado un delito de alterar la paz.

En el caso de *El Pueblo* v. *Ruiz* se resolvió que el delito denunciado no estaba comprendido en el artículo 368 del Código Penal. En *Pueblo* v. *Ways,* esta corte refiriéndose a la cuestión del elemento público que el acusado considera indispensable para que exista el delito de alterar la paz, se expresó así:

"Se ha insinuado que por más que la ley castiga la alteración de la paz de un individuo, siempre, para que exista el delito, es necesario el elemento público. Estamos conformes. Hemos visto que el artículo 368 forma parte del título que comprende los delitos contra la paz pública. La naturaleza de los diversos actos que abarca el indicado artículo y el espíritu general del mismo, así lo demandan. Pero tal elemento existe en el presente caso. La conducta del acusado para con el denunciante fué en público y expresamente se alega en la denuncia que la actuación del acusado dió lugar a la reunión de muchas personas . . . "

En el presente caso la evidencia aportada no demuestra que el acusado se produjese en forma estrepitosa o que sus palabras hubiesen sido dichas al alcance del oído de mujeres y niños. Se probó, sin embargo, que fueron pronunciadas en actitud colérica y en presencia de los mismos jóvenes que acompañaban al acusado. El policía Encarnación nos dice

que cuando Alipio Rivera pronunció estas palabras, el policía Fernández lo agarró por un brazo y lo arrestó. El testigo hizo uso de la macana en el momento en que uno de los jóvenes brincaba encima del policía. De su declaración se deduce que hubo cierta alteración de la paz. Afirma el testigo que los jóvenes estaban en una actitud violenta y amenazadora cuando hizo uso de la macana, aunque hace constar que nadie demostró una actitud violenta de darle al guardia. Las palabras que aparecen dirigidas por Alipio Rivera a los policías resultan, a nuestro juicio, mortificantes y ofensivas. Se calificó de abusadora la actitud de estos funcionarios del orden público y se pronunciaron palabras obscenas que tendían a herirlos y mortificarlos.

 De acuerdo con el artículo 368 del Código Penal puede alterarse la paz pública por medio de una conducta desordenada u ofensiva. En la denuncia se alega que el acusado dió lugar con su conducta desordenada y ofensiva a una alteración de la paz. La palabra "ofensiva" ha sido definida como algo que sirve o se usa con intención de ofender, desagradar o mortificar. Funk & Wagnalls' New Standard Dict. 1913. La referida palabra se define como aquello que injuria o hiere los sentimientos o causa desagrado, invita a la provocación o provoca ira. Esta definición la tomamos del caso de *People* v. *Whitman,* 157 N. Y. Supp. 1107, donde se acusó a una mujer de haber dirigido a otra epítetos viles bajo un estatuto que castiga el uso de lenguaje desordenado u ofensivo. En el referido caso la corte se expresó así:

"No hay duda de que el lenguaje dirigido a la mujer del querellante por la acusada es ofensivo dentro del significado de las anteriores definiciones. En un sentido amplio, tal lenguaje constituye una grosera violación de las reglas ordinarias de urbanidad, buena vecindad y buenas maneras, y si se dice en alta voz, de modo que pueda ser oído por el público, debe ser considerado como una ofensa contra el orden público y la decencia. El uso de tal lenguaje en ocasión y en un sitio en que pueda ser oído por otras personas ade-

más de aquélla a la cual se dirige, tiene la tendencia de ofender al público por la razón del significado vil y obsceno de las palabras. La verdad es que de cualquier modo que se juzgue, el uso de tales palabras debe ser ofensivo a la persona atacada.''

Esta corte, en el caso de *El Pueblo* v. *Ways,* supra, dice lo siguiente:

'' 'Offensive,' en general, significa, 29 Cyc. 1353, cualquier cosa que causa disgusto, que produce dolor u origina sensaciones desagradables.''

Como hemos dicho, las palabras obscenas y ofensivas fueron pronunciadas por el acusado en actitud colérica y en presencia de sus compañeros. La ofensa aparece inferida públicamente, habiéndose producido como consecuencia de la misma, según lo demuestra la prueba practicada, cierta alteración de la paz.

*Debe confirmarse la sentencia apelada.*